UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TISA MYERS | No. 18 CR 140<br><br>Judge Edmond E. Chang |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The government submits this position paper as to the factors applicable for the sentencing of defendant TISA MYERS. The defendant has pled guilty to willfully making false statements that were material to the lawfulness of a firearm sale. The applicable Guidelines range is 6 to 12 months. Defendant's offense is a serious one. But in light of defendant's specific history and characteristics and the principles of sentencing set forth in 18 U.S.C. § 3553(a), the government agrees with the Probation Office's recommendation that a five-year term of probation is an appropriate and just sentence in this case. Accordingly, the government respectfully requests that the Court impose that below Guidelines range sentence because it is sufficient but not greater than necessary to satisfy the goals set forth in the Sentencing Guidelines and § 3553(a).

I.    **Factual Background**

On March 4, 2015, defendant purchased a .22 caliber Sig Sauer pistol from a licensed firearms dealer in Crete, Illinois. In connection with the purchase of that pistol, defendant completed an ATF Form 4473. When defendant completed that form, she certified that she was the actual buyer of the Sig Sauer pistol. At the time

1

that defendant so certified, she, in fact, knew that she was not purchasing the gun for herself but was rather doing so on behalf of another person, namely her son, Individual A.

Soon after defendant purchased this firearm, Individual A was arrested for possessing this firearm on April 21, 2015. The reports documenting Individual A's arrest were attached to the government's version as Exhibit A. According to those reports, Chicago police officers observed Individual A in possession of this firearm. Individual A refused officers' requests to speak with him, disregarded verbal commands to comply with their requests, and subsequently resisted officers' attempts to arrest him. After they arrested defendant, officers recovered the firearm, which was loaded, from Individual A. Individual A was subsequently charged with aggravated unlawful use of a weapon and resisting a peace officer.

In addition to the gun purchase that defendant made on March 4, 2015, on February 24, 2016, defendant purchased another firearm, a .380 caliber Hi-Point pistol, model Strassell CF380, from a licensed firearms dealer. When defendant purchased the Hi-Point pistol, she knowingly represented on an ATF Form 4473, that her residential address at the time was 747 East 133rd Street, Chicago, Illinois 60827. Defendant knew at the time that she lived in Indiana, not Illinois. *See United States v. Queen*, 403 F.3d 337, 338-39 (7th Cir. 2005) (explaining that 18 U.S.C. § 922(b)(5) "requires the dealer to record the buyer's place of residence, thus making a firearm sale by a gun dealer illegal unless the dealer notes the buyer's place of

residence in records the dealer is required to maintain") (internal quotation marks omitted). The whereabouts of this firearm are currently unknown.

On August 22, 2016, ATF agents interviewed defendant about these gun purchases. At the conclusion of the interview, defendant signed a handwritten confession where she admitted to making the false representations on the March 4, 2015 and February 24, 2016 ATF 4473 Forms. The government attached the ATF report documenting the interview with defendant and defendant's handwritten statement as Exhibit B to the government's version.

## II. Guidelines Calculation and Sentencing Range

### A. Offense Level Calculation and Criminal History Calculation

As a matter of process, the Court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the section 3553(a) factors, and adequately explain the chosen sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

The government agrees with the offense level calculations and defendant's criminal history category as set forth in the PSR. PSR ¶¶ 22-30, 37. Pursuant to Guideline § 2K2.1(a)(7), the base offense level is 12. PSR ¶ 22.

### B. Guidelines Range

Defendant has accepted responsibility for the offense. PSR ¶¶ 19, 29. Accordingly defendant's total adjusted offense level is 10. PSR ¶ 30. When that offense level is considered with her placement in Criminal History Category I, PSR ¶ 37, defendant's advisory Guidelines range is 6 to 12 months' imprisonment. PSR ¶ 69. Because this Guidelines range is in Zone B of the Sentencing Table, PSR ¶ 69, a

sentence of probation is permitted under the Guidelines. *See* Guideline § 5C1.1(c)(3). If the Court determine probation is appropriate, a term between one and five years is authorized under 18 U.S.C. § 3561(c)(1). 18 U.S.C. § 3561(c)(1) (authorizing a probation sentence where the offense is a Class C felony); *see* U.S.S.G. § 5B1.2(a)(1) (providing that if probation is imposed, the term shall be at least one year but not more than 5 years if the offense level is six or greater).

### III. Application Of The Sentencing Factors

A below guidelines sentence of five years' probation is reasonable and appropriate in this case because the § 3553(a) factors weigh in favor of such a sentence. In determining the sentence to impose, courts consider, among other factors, the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).[1]

There are several § 3553(a) factors that support a guidelines range sentence for this defendant, including: (1) her history and personal characteristics, (2) the seriousness of the offense, (3) the need to provide just punishment for the offense and adequate deterrence, and (4) the need to protect the public from further crimes of the defendant. A guidelines range sentence adequately addresses these factors and

---

[1] Courts also must consider the need for the sentence to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D); *see also e.g., United States v. Vallar*, 635 F.3d 271, 278 (7th Cir. 2011). Section 3553(a) also requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.

appropriately provides a just sentence for this defendant.

### A. History and Characteristics of the Defendant

Defendant is 51 years old. PSR at 2. Defendant has no prior criminal history. PSR ¶ 37. She reported to the probation officer a "good" childhood and a close relationship with her mother with whom she maintains daily contact. PSR ¶ 46. Defendant described her marriage to her ex-husband as "emotionally and verbally abusive." PSR ¶ 47. She is now in a stable relationship with her current boyfriend; she currently resides with her boyfriend and boyfriend's sister. PSR ¶¶ 42, 47, 49. Defendant described a close relationship with her adult son, Individual A, who is currently in custody in the Cook County Jail on a pending felony charge.[2] Defendant has reported suffering from mental health issues and is attending counseling for these issues. PSR ¶¶ 55-56. Defendant reported various historical employment positions to Probation, though Probation described this employment as "extremely marginal." PSR ¶¶ 60, 62, 64. Defendant further describes in her sentencing memorandum the difficulties that she has faced after the offense conduct occurred in this case, including the loss of a family member and the loss of her home and employment due to the COVID-19 pandemic. R. 35 at 3-4.

---

[2] The PSR notes that Individual A was charged with aggravated robbery with a firearm. PSR ¶ 48. As defendant noted, the indictment for that case indicates the charged offense was aggravated robbery with a dangerous weapon other than a firearm, namely a bludgeon. R. 35 at 3, n. 1; *id.* at Exh. D.

Defendant's lack of criminal history, her personal history and family struggles, her subsequent housing challenges, her mental health issues, and her compliance with the conditions of her pretrial release are all mitigating factors that the government considered and found compelling in reaching its recommendation that a five-year term of probation was an appropriate sentence.

B. **Seriousness of the Offense**

The nature of the defendant's offense and related conduct is serious. The Supreme Court has explained the purposes of section 922(a)(6) and the potential harms inherent in the straw-purchasing of firearms:

> [T]he statute establishes an elaborate system to verify a would-be gun purchaser's identity and check on his background. It also requires that the information so gathered go into a dealer's permanent records. The twin goals of this comprehensive scheme are to keep guns out of the hands of criminals and others who should not have them, and to assist law enforcement authorities in investigating serious crimes. And no part of that scheme would work if the statute turned a blind eye to straw purchases—if, in other words, the law addressed not the substance of a transaction, but only empty formalities.
>
> To see why, consider what happens in a typical straw purchase. A felon or other person who cannot buy or own a gun still wants to obtain one. (Or, alternatively, a person who could legally buy a firearm wants to conceal his purchase, maybe so he can use the gun for criminal purposes without fear that police officers will later trace it to him.) Accordingly, the prospective buyer enlists an intermediary to help him accomplish his illegal aim. Perhaps he conscripts a loyal friend or family member; perhaps more often, he hires a stranger to purchase the gun for a price. The actual purchaser might even accompany the straw to the gun shop, instruct him which firearm to buy, give him the money to pay at the counter, and take possession as they walk out the door.

*\*\*\**

> And likewise, the statute's record-keeping provisions would serve little purpose if the records kept were of nominal rather than real buyers . . . That information helps to fight serious crime. When police officers retrieve a gun at a crime scene, they can trace it to the buyer and consider him as a suspect. Too, the required records enable dealers to identify certain suspicious purchasing trends, which they then must report to federal authorities. But once again, those provisions can serve their objective only if the records point to the person who took actual control of the gun(s). Otherwise, the police will at most learn the identity of an intermediary, who could not have been responsible for the gun's use and might know next to nothing about the actual buyer.

*Abramski v. United States*, 573 U.S. 169, 181-83 (2014) (internal citations and parantheticals omitted).

Here, defendant purchased the gun for Individual A and knowingly certified that the gun was for her when it was, in fact, for him. By concealing that Individual A was the actual buyer, defendant "prevented the dealer from transacting with [him] face-to-face, recording his name, age, and residence, inspecting his photo ID, submitting his identifying information to the background check system, and determining whether he was prohibited from receiving a firearm," *id.* at 188 (internal citations omitted), conduct that "thwarted application of essentially all of the firearms law's requirements," *id.* at 188-89.

Although defendant told the probation officer that she did not know that her actions were illegal, PSR ¶ 20; *see also* PSR ¶ 50, ignorance of the law is, of course, no excuse for her conduct.

The impact of prohibited persons illegally possessing firearms on a community cannot be overstated. The City of Chicago has been inundated with violence as a result of individuals who illegally possess firearms and subsequently use those

firearms to commit crimes. Those who straw purchase firearms and unlawfully provide them to others contribute to the potential violence in Chicago that could result from firearms ending up in the hands of those who should not possess them. Defendant's conduct had the potential for even more serious consequences.

The government notes that in addition to the Sig Sauer that she purchased on March 4, 2015, defendant also purchased a nine millimeter Beemiller C-9 Hi-Point pistol that day. On the ATF Form 4473, defendant certified that she was the actual buyer of this firearm too. A little over a month later, on April 15, 2015, Chicago police officers recovered this firearm from a stolen vehicle that was then-occupied by Juvenile A, Juvenile B, and Juvenile C. According to the police reports, officers observed the vehicle, which had been reported stolen, parked in the Altgeld Gardens.[3] Officers approached the vehicle to conduct a traffic stop and observed Juvenile A, wearing a black ski mask, in the back of the vehicle, placing his hands towards his feet and making shoving motions underneath the seat. After removing Juvenile A from the vehicle, officers recovered the Hi-Point pistol defendant had purchased from underneath the seat. The gun was loaded with an extended magazine attached to it. Officers observed that the ignition column of the vehicle was stripped out, and a screwdriver had been inserted into the column. Juvenile A was arrested and charged with aggravated unlawful use of a weapon and criminal trespass to a vehicle. The

---

[3] Copies of the police reporting documenting these arrests were provided to defendant during discovery. The government will bring copies of these arrest reports to the sentencing hearing or otherwise provide a copy to the Court in advance.

other occupants of the car, Juvenile B and Juvenile C, were also arrested and charged with possession of a stolen motor vehicle.

In light of the seriousness of the defendant's conduct, the government agrees with Probation's recommendation that a longer probation period of five years appropriately reflects the seriousness of defendant's offense and is a fair and just punishment when considering an application of the other § 3553(a) factors.

### C. The Need for Defendant's Sentence to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Future Crimes by this Defendant

Defendant's actions of straw-purchasing showed a disrespect for the law, and defendant's offense requires a sentence that reflects the seriousness of this offense. As the *Abramski* Court concluded, "[we] can hardly think of a misrepresentation any more material to a [firearm] sale's legality." 573 U.S. at 189. The government's proposed sentence will help promote respect for the law, while providing a just punishment for defendant's current crime.

As to deterrence, the sentence imposed in this case must deter others from engaging in straw-purchasing. In addition to general deterrence, defendant must specifically be deterred from committing future crimes. A below Guidelines sentence but still involving a significant term of probation is necessary in order for defendant to understand that an offense such as this is an offense that comes with serious consequences.

## IV. Probation Conditions

Consistent with Probation's recommendation, the government requests that the Court impose the following conditions on the basis that they are reasonable and appropriate to deter defendant from returning to criminal conduct and will further help to ensure that defendant receives appropriate support while on probation. Defendant did not note any objection to these probation conditions. R. 35.

### A. Mandatory Conditions Pursuant to 18 U.S.C. Section 3563(a)

The government requests that defendant be required to comply with the following mandatory probation conditions pursuant to 18 U.S.C. § 3563(a), PSR at 13-14:

- **Condition No. 1:** Defendant shall not commit another federal, state, or local crime.

- **Condition No. 2** (not applicable): The court declines to impose the requirement of restitution or community service because defendant's financial and health circumstances render this condition plainly unreasonable.

- **Condition No. 3:** Defendant shall not unlawfully possess a controlled substance.

- **Condition No. 5:** Defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation, and up to 104 periodic tests thereafter, for use of a controlled substance.

- **Condition No. 7:** Defendant shall notify the court of any material change in her economic circumstances that might affect her ability to pay restitution, fines, or special assessments.

- **Condition No. 9:** Defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

10

B. **Discretionary Conditions Pursuant to 18 U.S.C. § 3563(b)**

The government further requests that the Court impose the following discretionary conditions pursuant to 18 U.S.C. § 3563(b) on the basis that they are appropriate and necessary to promote defendant's respect for the law and deter her from committing future crimes. PSR at 14-16. These conditions serve to support defendant's reintegration into society and to promote deterrence and protect the public, and are further appropriate in this case in light of defendant's personal characteristics:

- **Condition No. 6**: Defendant shall refrain from knowingly meeting or communicating with any person she knows to be engaged, or planning to be engaged, in criminal activity.

- **Condition No. 7**: Defendant shall refrain from the excessive use of alcohol or any use of a narcotic drug or controlled substance, as defined in § 102 of the Controlled Substances Act, without a prescription by a licensed medical practitioner.

- **Condition No. 8:** Defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

- **Condition No. 9**: Defendant shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

- **Condition No. 14**: Defendant shall not knowingly leave the federal judicial district where she is authorized to reside without first getting permission from the court or the probation officer.

- **Condition No. 15**: Defendant shall report to a probation officer as directed by the court or a probation officer.

- **Condition No. 16**: Defendant shall permit a probation officer to visit her at any reasonable time at home, at work, at school, at a community service location, and any other reasonable location specified by the

11

probation officer, and permit confiscation of any contraband observed in plain view of the probation officer.

- **Condition No. 17:** Defendant shall notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer.

- **Condition No. 18**: Defendant shall notify a probation officer promptly, within 72 hours, if arrested, charged with a crime, or questioned by a law enforcement officer.

- **Condition No. 22**: Defendant shall satisfy the specified special conditions.

C. **Special Conditions Pursuant to 18 U.S.C. § 3563(b)(22)**

Finally, the government respectfully requests that defendant be ordered to comply with the following special conditions permitted by § 3563(b)(22), which further supports defendant's reintegration into society. PSR at 18.

- **Condition No. 11**: Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

- **Condition No. 13**: Defendant shall observe one Reentry Court session, as instructed by her probation officer.

## V. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a below Guideline sentence of five years' probation and order the requested probation conditions consistent with the goals of criminal punishment.

Date: May 18, 2020            Respectfully Submitted,

                                            JOHN R. LAUSCH, JR.
                                            United States Attorney

By:    */s/ Sheri L. Wong*
        Sheri L. Wong
        Assistant U.S. Attorney
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 697-4069